UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHEZNE BAUGH,

                        Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                        Defendant.

Case No. 3:11-cv-05374-RBL-KLS

REPORT AND RECOMMENDATION

Noted for February 10, 2012

Plaintiff has brought this matter for judicial review of defendant's denial of her

application for supplemental security income ("SSI") benefits.  This matter has been referred to

the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR

4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

After reviewing the parties' briefs and the remaining record, the undersigned submits the

following Report and Recommendation for the Court's review, recommending that for the

reasons set forth below, defendant's decision to deny benefits be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On December 24, 2006, plaintiff filed an application for SSI benefits, alleging disability

as of July 11, 1988, due to a heart condition. See Administrative Record ("AR") 13, 179, 200.

Her application was denied upon initial administrative review and on reconsideration. See AR

13, 106, 113.  A hearing was held before an administrative law judge ("ALJ") on March 13,

2009, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert

REPORT AND RECOMMENDATION - 1

and a vocational expert. See AR 23-62. A second hearing was held before the same ALJ on May

7, 2009, at which plaintiff, represented by counsel, again appeared and testified, as did a different

medical expert and a different vocational expert. See AR 63-103.

On July 15, 2009, the ALJ issued a decision in which plaintiff was determined to be not

disabled. See AR 13-22. Plaintiff's request for review of the ALJ's decision was denied by the

Appeals Council on March 16, 2011, making the ALJ's decision defendant's final decision. See

AR 1; see also 20 C.F.R. § 416.1481. On May 16, 2011, plaintiff filed a complaint in this Court

seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed

with the Court on July 29, 2011. See ECF #6. The parties have completed their briefing, and

thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an

award of benefits or, in the alternative, for further administrative proceedings, because the ALJ

erred: (1) in evaluating the medical expert testimony in the record; (2) in assessing plaintiff's

credibility; (3) in failing to find her disabled at step three of the sequential disability evaluation

process[1]; and (4) in assessing her residual functional capacity. For the reasons set forth below,

however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled,

and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the

proper legal standards were applied and there is substantial evidence in the record as a whole to

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id.

REPORT AND RECOMMENDATION - 2

support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See

Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F.

Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational

interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577,

579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Expert Testimony

        The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Where the medical evidence in the record is not conclusive, "questions of credibility and

resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

within this responsibility." Id. at 603.

        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

"logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

REPORT AND RECOMMENDATION - 3

draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

Plaintiff argues that neither the medical expert who testified at the second hearing nor the ALJ properly weighed her testimony regarding her symptoms and complaints stemming from her

REPORT AND RECOMMENDATION - 4

heart problems.  Specifically, plaintiff asserts both the medical expert and the ALJ failed to take into consideration her testimony that she experienced heart palpitations that could last anywhere from one and a half minutes to one hour, that she also got lightheaded and had trouble breathing when she experienced them, and that there were no activities where she did not experience these palpitations. See AR 75.  As noted by plaintiff, while the medical expert testified that "[m]yriads [sic] of things can cause palpitations," in plaintiff's case it was "more likely" that the palpitations came from her congenital heart condition. AR 94-95.

Plaintiff criticizes the medical expert for merely speculating, without basis or supporting evidence, that her symptoms could have many causes.  But he is a medical expert, and therefore his expertise in the area – along with his review of the evidence in the record – is the basis for his testimony.  Indeed, that is why medical experts are called to testify.  Their specialized knowledge is obtained to help the ALJ in evaluating the other medical evidence in the record.  In addition, plaintiff has failed to demonstrate that there is anything "speculative" about the medical expert's testimony on this issue.  That is, plaintiff has failed to present any evidence to rebut that expert's testimony that palpitations can be due to a myriad of medical causes. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (claimant has burden of proof on steps one through four of sequential disability evaluation process).

In any event, as noted above, the medical expert eventually admitted that in this case it is more likely that plaintiff's palpitations were caused by her heart condition.  This, however, does not mean either the medical expert or the ALJ were required to find plaintiff in fact experiences the symptoms she testified to or does to the extent she indicated.  Nor does it mean that even if plaintiff does experience such symptoms, they have resulted in work-related limitations more significant than those adopted by the ALJ in this case as discussed in greater detail below. See

REPORT AND RECOMMENDATION - 5

Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability.").

Plaintiff points to nothing in the medical evidence in the record that supports a finding of disabling, work-related limitations based on her reported symptoms. Further, as also discussed in greater detail below, the ALJ stated valid reasons for discounting plaintiff's credibility, which included the fact that plaintiff herself had admitted improvement in her symptoms. As such, the ALJ was not required to adopt any work-related limitations or to find plaintiff disabled based on her testimony. The undersigned thus finds no error here.

II.      The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

REPORT AND RECOMMENDATION - 6

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility for the following reasons:

The claimant has been prescribed and has taken appropriate medications for the alleged impairment, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms. Specifically, the treatment records from the University of Washington state the claimant's heart palpitations "significantly improved" while using the prescription drug Atenolol. Exhibits 1F/2, 9F/26. Lasix helped control the claimant's shortness of breath and orthopnea symptoms. Exhibit 9F/41.

Likewise, treatment effectively corrected the claimant's heart condition; an assessment at the University of Washington showed the pulmonary valve appeared "entirely normal" and no pathologic changes were noted. Exhibit 1F/5. The treatment notes state that the claimant throughout her childhood had been active and very athletic. Although she felt some recent decrease in exercise tolerance it was "very mild." The claimant was able to walk long distances on a flat surface at a reasonable pace without difficulty and was able to walk up three-four flights of stairs without shortness of breath. She expressed "feeling well." Exhibits 1F/13, 15. The medical expert pointed out that after the heart surgeries early in life, the claimant had done "very well" living a "normal childhood without restriction." Exhibit 1F/13.

The claimant's subjective complaints are not reasonably consistent with the medical evidence. Objective testing showed that although the claimant complained of palpitations and lightheadedness, a Holter monitor showed some sinus rhythm with occasional PVCs [premature ventricular contractions] but no significant sustained arrhythmias. The claimant even admitted that her palpitations and lightheadeedness symptoms had diminished. No syncopal or near-syncopal episodes were noted and she did not have any edema, orthopnea or PND [paroxysmal nocturnal dyspnea]. Exhibits 1F/8-9, 9F/84. No changes were seen between the 2007 and 2008 echocardiography report, noted above. Exhibits 8F/11-14. An echocardiography was relatively normal as discussed above. Exhibits 8F/67-70. An EKG performed in August 2007 showed

REPORT AND RECOMMENDATION - 7

normal sinus rhythm. Exhibit 8F/16.  Similarly, a CT scan of the chest showed
no evidence of acute pulmonary embolism. Exhibit 8F/60.  Further, the testing
above indicated the claimant's condition was stable and subsequent testing did
not show any changes. Exhibits 8F/70, 78.

The claimant can perform a full range of daily activities which is inconsistent
with the nature, severity and subjective complaints of the claimant.  A social
worker reported that the claimant was moving to Idaho and planned on
attending school. Exhibit 9F/76.  She also attended church regularly. Exhibit
9F/86.  More significantly, the claimant is apparently able to care for a
newborn child at home, which can be quite demanding both physically and
emotionally, without any particular assistance.  In the claimant's function
report, she stated daily she dealt with the state department of Social and
Health Services, the Social Security Administration and medical appointments
at the University of Washington.  She was able to prepare simple meals daily.
Household chores included laundry, vacuuming, ironing, washing dishes and
dusting.  The claimant traveled by driving or using a shuttle.  Shopping
included groceries, baby supplies and personal items.  Socially, she was able
to spend time on the telephone and she visited friends. Exhibits 5E/1-6.  These
activities do not reflect the disabling limitations alleged by the claimant.
Related, the social worker opined that the claimant presented with a "very
confident affect," she seemed to be "very intelligent" and "goal oriented" for
her age, indicating the claimant had few, if any, limitations in her activities of
daily living. Exhibit 1F/12.

AR 18-19.  These are all valid bases for finding plaintiff to be not fully credible. See Morgan,

169 F.3d at 599 (ALJ may discount claimant's credibility on basis of medical improvement);

Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Regennitter v. Commissioner of

SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's subjective complaints

are "inconsistent with clinical observations" can satisfy clear and convincing requirement);

Smolen, 80 F.3d at 1284 (to determine whether claimant's symptom testimony is credible, ALJ

may consider his or her daily activities and observations of third parties).

Indeed, plaintiff has not specifically challenged any of the above reasons for discounting

her credibility. See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2

(9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin

Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make

REPORT AND RECOMMENDATION - 8

argument in opening brief, objection to district court's grant of summary judgment was waived);

Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued

in opening brief ordinarily will not be considered). Accordingly, there was no error in the ALJ's

assessment of plaintiff's credibility.

III.     The ALJ's Step Three Determination

As noted above, at step three of the sequential disability evaluation process, the ALJ must

evaluate the claimant's impairments to see if they meet or medically equal any of impairments

contained in the "Listings", and if any of the claimant's impairments meet or medically equal a

listed impairment, he or she is deemed disabled. See 20 C.F.R § 416.920(d); Tackett, 180 F.3d

1094, 1098 (9th Cir. 1999).  The burden of proof is on the claimant to establish he or she meets

or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098.  "A generalized

assertion of functional problems," however, "is not enough to establish disability at step three."

Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or

psychological abnormalities which can be shown by medically acceptable clinical and laboratory

diagnostic techniques." 20 C.F.R. § 416.908.  It must be established by *medical* evidence

"consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL

374184 *2 (determination conducted at step three must be made on basis of medical factors

alone).  An impairment will be found to meet a listed impairment "only when it manifests the

specific findings described in the set of medical criteria for that listed impairment." SSR 83-19,

1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the

*medical* findings (defined as a set of symptoms, signs, and laboratory findings) are at least

REPORT AND RECOMMENDATION - 9

1
2   equivalent in severity to the set of medical findings for the listed impairment." Id. (emphasis

3   added); see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for

4   benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent'

5   to a listed impairment, he must present medical findings equal in severity to *all* the criteria for

6   the one most similar listed impairment.") (emphasis in original).  Therefore, "symptoms alone"

7   will not justify a finding of medical equivalence. Id.  The ALJ also "is not required to discuss the

8   combined effects of a claimant's impairments or compare them to any listing in an equivalency

9   determination, unless the claimant presents evidence in an effort to establish equivalence." Burch

10  v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

11      The ALJ need not "state why a claimant failed to satisfy every different section of the

12  listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ

13  did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's

14  impairments did not meet or exceed Listings).  This is particularly true where, as noted above,

15  the claimant has failed to set forth any reasons as to why the Listing criteria have been met or

16  equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss

17  combined effect of claimant's impairments was not error, noting claimant offered no theory as to

18  how, or point to any evidence to show, his impairments combined to equal a listed impairment).

19      Here, at step three of the sequential disability evaluation process, the ALJ found plaintiff

20  did not have an impairment or combination of impairments that met or medically equaled any of

21  the impairments contained in the Listings, finding further in relevant part:

22
23          The signs and laboratory findings fail to meet the severity required for
            [L]isting 4.02, chronic heart failure.  Specifically, 4.02(A) requires medically
24          documented evidence of systolic failure, with left ventricular end diastolic
            dimensions greater than 6.0 cm or ejection fraction of less than 30 percent or
25          diastolic failure with left ventricular posterior wall plus septal thickness
            totaling 2.5 cm or greater with an enlarged left atrium greater than or equal to
26

REPORT AND RECOMMENDATION - 10

4.5 cm with normal or elevated ejection fraction during a period of stability. The most recent echocardiography, performed on August 29, 2008 showed the structure and systolic function of the left ventricular chamber was normal size at 2.4 cm. Exhibit 8F/14. Since the [above] A criteria has [sic] not been satisfied, the B conditions are not addressed.[2]

Also, the signs and laboratory findings fail to meet the severity required for [Listing] 4.05, recurrent arrhythmias. This listing requires recurrent episodes of cardiac syncope or near syncope despite prescribed treatment which is documented by resting or ambulatory (Holter) electrocardiography. Recordings from the Holter monitor did not show any sustained arrhythmias and the claimant subsequently stated that they subsided with medication. Exhibit . . . 9F/26-28, 84.

Finally, the objective testing does not show the claimant's symptoms meet the severity required for [L]isting 4.06, symptomatic congenital heart disease. Specifically, to meet the [L]isting, there must be medically documented evidence of (A) cyanosis at rest and (1) hematocrit of 55 percent or greater; or (2) arterial 02 saturation of less than 90 percent in room air, or resting arterial PO1 of 60 Torr or less or (B) intermittent right-to-left shunting resulting in cyanosis or exertion or (C) secondary pulmonary vascular obstructive disease with pulmonary arterial systolic pressure elevated to at least 80 percent of the systemic arterial systolic pressure.

The medical expert [at the second hearing], Donald Clark, M.D. verified that the evidence did not show the claimant's symptoms met [L]isting 4.06, as discussed more thoroughly below, since the divider between the right and left ventricle did not have a hole in it and she had not been cyanotic; therefore, here symptoms did not meet [Listing] 4.06([A]) or ([B])[3]; ([C]) was not met

---

[2] Listing 4.02 requires that both its "A" (Listing 4.02A) and "B" (Listing 4.02B) criteria be satisfied. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02.

[3] The ALJ's discussion on this issue continued as follows:

> . . . Dr. Clark . . . discussed the echocardiogram, exhibit 11F/8, as it related to [L]isting 4.06. He stated since the divider between the right and left ventricle did not have a hole in it, the claimant had not been cyanotic and therefore, her symptoms did not meet [Listing] 4.06 (A) or (B); concerning criteria (C) chronic failure, he stated the pressure of her veins had been normal, the pressure of the pulmonary arteries had been normal and there was no documentation of liver enlargement. The left side of the heart had always been recorded as normal; systolic functioning was normal. Concerning heart palpitations, the Holter monitor never showed anything of significance and her symptoms were controlled with medication. Also, concerning heart failure, he did not find any evidence in the record of veins bulging at her neck which would indicate the beginning of heart failure. He further pointed out that since the claimant's heart surgeries she had lived a relatively normal life without restriction, as discussed earlier. The claimant was also very active throughout her childhood and athletic. On this basis, he opined that the claimant did not meet any of the criteria of [Listing] 4.06.

AR 20.

REPORT AND RECOMMENDATION - 11

1

2          because pressure of the veins was normal, the pressure of the pulmonary
           arteries had been normal and there was no documentation of live enlargement.
3          The left side of the heart had always been recorded as normal; systolic
           functioning was normal.[4]  In addition, the evidence does not indicate a
4          hematocirt level of 55 percent or greater.  As noted above, an exercise test
           showed normal cardiopulmonary testing with 02 saturation was [sic] 105%.
5          Exhibit 8F/16.  There is also no evidence of secondary pulmonary vascular
           obstructive disease in the record.

6     AR 16-17.

7          Plaintiff argues that because her oxygen saturation level dropped to 80% on testing in late

8     May 2009 (see AR 633), the ALJ should find she met or medically equaled the criteria of Listing

9
      4.06A, considering her testimony regarding her symptoms and limitations at the second hearing.
10
      But as noted by defendant and found by the ALJ, to meet the criteria of Listing 4.06A, there
11
      must be documented in the record medical evidence of *both* "[c]yanosis at rest" *and* "[a]rterial
12
      O$_2$ saturation of less than 90 percent in room air," and there was no evidence of cyanosis in the
13
      record. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.06A.  Nor has plaintiff cited to any clinical
14
      findings in the record that supports a determination of medical equivalence.[5]  In addition, as
15
      discussed above, the ALJ did not err in discounting plaintiff's credibility, and therefore he was
16
      not required to adopt any limitations based on her testimony.  As noted above, furthermore, the
17
      ALJ's determination at step three of the sequential disability evaluation process is to be made
18
      solely on the basis of the medical evidence in the record, and that evidence, as the ALJ pointed
19
      out, fails to support a finding of Listing-level severity.
20

21

22

23

24    [4] Listing 4.06 requires that its "A" (Listing 4.06A), "B" (Listing 4.02B) or "C" (Listing 4.02C) criteria be satisfied.
      See 20 C.F.R. Pat 404, Subpt. P, App. 1, § 4.06.

25    [5] Plaintiff does point to the fact that she underwent several heart-related procedures in late May 2009, and early June
      of that same year. See AR 638-40, 751-53.  But although these may be serious procedures, the mere fact that she
26    underwent them, does not alone establish the existence of significant work-related limitations, let alone a finding of
      disability.  Indeed, again as noted by the ALJ, the objective medical evidence in the record overall fails to support a
      finding of Listing-level severity or limitations to the extent alleged by plaintiff.

      REPORT AND RECOMMENDATION - 12

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the residual functional capacity:

**. . . to perform sedentary work . . . The claimant can frequently lift/carry no more than five pounds. The claimant can occasionally lift/carry ten pounds. The claimant can sit for approximately six hours out of an eight hour workday. The claimant can stand for no more than two hours out of an eight hour workday.**

AR 17 (emphasis in original). As discussed above, just because plaintiff underwent a number of heart-related procedures in late May and early June 2009, this by itself does not indicate there are significant work-related limitations that affect her. Nor, also as discussed above, was the ALJ under any obligation to adopt any more severe functional limitations based on plaintiff's reports

REPORT AND RECOMMENDATION - 13

or testimony, given that the ALJ properly discounted her credibility.

Plaintiff cites to an occupational therapy note in the record dated June 6, 2009, in which the following "[c]ardiac precautions" were set forth: "no lifting > 10lbs for 6 weeks; no shoulder abduction >90 degrees; no horizontal abduction past neutral." AR 774. But it is not at all clear that these were restrictions as opposed to mere precautions, or that even if they were restrictions, that they were medically required, i.e., prescribed by a physician. In addition, the requirement of no lifting more than 10 pounds – a restriction, it should be noted, the ALJ himself adopted – was specifically limited to a period of 6 weeks. See Tackett, 180 F.3d at 1098 (claimant has burden of showing he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months).

Nor is it clear that the above limitations concerning abduction would translate into any actual reaching or other similar specific, work-related limitations. For example, on the same occupational therapy note, plaintiff was found to have full range of motion in both of her upper extremities. See AR 774. Further, no other medical source in the record has assessed any such limitations, either in terms of abduction or reaching, or, for that matter, with respect to use of her upper extremities in general other than the lifting and carrying limitations adopted by the ALJ in his decision. As such, here too there was no error.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

REPORT AND RECOMMENDATION - 14

72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **February 10, 2012**, as noted in the caption.

DATED this 23rd day of January, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15